UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

JEFFREY STEPHEN LAWRENCE GREEN                CASE NO. 17-10058
MEMORY C. GREEN
    DEBTORS                                                              CHAPTER 7

SOUTHEAST PROPERTY HOLDINGS, LLC
    PLAINTIFF

V.                                                                            ADV. NO. 17-01017

JEFFREY STEPHEN LAWRENCE GREEN
    DEFENDANT

## MEMORANDUM OPINION

Plaintiff Southeast Property Holdings, LLC, ("SEPH") sued debtor Jeffrey Stephen Lawrence Green ("Green") to have a $41 million judgment debt declared nondischargeable. After narrowing issues for trial through summary judgment,[1] the court tried SEPH's sole remaining claim: that Green willfully and maliciously harmed SEPH when he had a family limited liability company, in violation of a federal district court's charging order, transfer $8,700 to pay an accountant for preparing tax returns for Green and several family businesses in which he owned interests. This memorandum opinion explains why $1,626.00 of the total sought is nondischargeable under 11 U.S.C. §523(a)(6).

## I. FACTS

Few of the facts are in dispute.

Green and his father owned several businesses engaged in natural disaster remediation and had personally guarantied their debts to Vision Bank, SEPH's predecessor in interest. After

---

[1] February 9, 2018 Order Granting Partial Summary Judgment [P-51].

the companies defaulted, the United States District Court for the Middle District of Louisiana in 2014 rendered judgment for SEPH and against Green and others on the personal guaranties. With interest, the judgment now exceeds $41 million.  The United States District Court for the Southern District of Alabama later issued a charging order to aid SEPH's efforts to collect the judgment.[2]  The charging order directed thirteen Green companies[3] "to report to Seph [*sic*] each time a distribution is made with respect to any transferable interest, listing the amount and time of all distributions made at the time or in connection with that distribution, *and distribute to Seph [sic] any amounts that become due or distributable to J.S. Lawrence Green.*"[4]

SEPH's sole remaining claim against the debtor rests on a transfer by Green & Sons, LLC, in late 2017 that it contends violated the charging order.  Green & Sons, LLC, is a Green family business that, though not one of SEPH's judgment debtors, was named in and subject to the charging order.

Faced with collection activity on the federal judgment, Green and his wife sought chapter 7 relief.  However, the couple lacked current income tax returns, which are now required to file and maintain a bankruptcy case.[5]  Accordingly, Green asked Hartmann, Blackmon & Kilgore, the accounting firm that previously had rendered accounting services for Green family interests, to prepare the returns.  Hartmann agreed to prepare state and federal tax returns for the Greens

---

[2] Alabama law allows a judgment creditor of a member of a limited liability company to obtain an order that "[charged] the interest of the member … with payment of the unsatisfied amount of the judgment with interest.  To the extent so charged, the judgment creditor has only the rights of an assignee of financial rights."  Ala. Code §10A-5-1.01, *et seq*.  *See SE Property Holdings, LLC v. Unified Recovery Group, LLC*, 2014 WL 5846388, *1 (S.D. Ala. 2014).  The district court applied the remedy pursuant to Fed. R. Civ. P. 69(a)(1).

[3] November 12, 2014 charging order in *SE Property Holdings  v. Unified Recovery Group, LLC*, Misc. Action 14-0008 in the United States District Court for the Southern District of Alabama, Southern Division [Plaintiff's exhibit 2].

[4] *Id*. (emphasis added).

[5] 11 U.S.C. §521(e)(2) and (f).

and the family companies in which Green owned an interest for $10,000.[6]  Green assembled that sum by combining $1,300 of his own exempt retirement funds with $8,700 he arranged to transfer from Green & Sons, LLC.[7]  The debtor admitted knowing that SEPH had procured the charging order when he directed a bookkeeper to transfer the money from Green & Sons, LLC, to Hartmann.[8]

The accounting firm allocated the $10,000 payment among its clients as follows:[9]

(1)  $2,900 for preparing 2016 federal and state tax returns for Green & Sons, LLC;

(2)  $1,524 for preparing 2016 federal and state tax returns for IED, LLC;

(3)  $1,500 for preparing 2016 federal and state tax returns for International Equipment Distributors, Inc.;

(4)  $1,150 for preparing 2016 federal and state tax returns for Green & Sons II, LLC; and

(5)  $2,926 for preparing 2016 federal and state tax returns for Green and his wife.

## II.  PROCEDURAL HISTORY

SEPH's original complaint[10] alleged that both debtors actually defrauded SEPH and, in the alternative, that they willfully and maliciously injured SEPH by withholding money it should have received pursuant to its charging order.  Its amended complaint[11] alleged that Green

---

[6]  Defendant's exhibit 2.  Presumably the entities' returns were necessary for issuance of schedules K-1 to Green, an essential part of his own income tax filing.

[7]  Trial Transcript [P-70], p. 35, line 16 – p. 36, line 10.

[8]  Trial Transcript [P-70], p. 137, lines 15-20.

[9]  Defendant's exhibit 2.

[10]  SEPH styled its complaint as an "Objection to Discharge" although the relief it sought was a declaration of nondischargeability.

[11]  Amended Complaint [P-7].

withheld or diverted from SEPH proceeds of a sale by Green & Sons, LLC, again in violation of the charging order.

SEPH voluntarily dismissed its claims against co-defendant Memory C. Green at the January 31, 2018 hearing on the defendants' motion for summary judgment.[12] At that hearing, the court granted partial summary judgment on the defendants' motion but held that a dispute of material fact existed regarding dischargeability of Green's debt to SEPH for money that the debtor diverted from Green & Sons, LLC, to pay his accountants for tax return preparation.

Green was the sole trial witness.

### III.  BURDEN OF PROOF

SEPH bears the burden of proving by a preponderance of the evidence that Green's obligation is not dischargeable. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Exceptions to discharge must be strictly construed against the creditor and liberally construed in favor of the debtor. *Hudson v. Raggio & Raggio, Inc. (Matter of Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997).

### IV.  ANALYSIS

SEPH's claims that survived summary judgment are not premised on Green's having defrauded it or Vision Bank, its predecessor in interest, in connection with the bank's extension of credit to Green and his family businesses. Rather, its case rests entirely on alleged transfers Green caused to be made in violation of the charging order. Specifically, SEPH claims that the amounts Green & Sons, LLC, paid Green's accountant for preparing the debtors' personal 2016 federal and state tax returns[13] should have been paid to it, and therefore comprise a debt that is nondischargeable under 11 U.S.C. §523(a)(2)(A) as one for "money, property, services, or

---

[12] P-38.

[13] Plaintiff first made this argument in its Opposition to Defendant's Motion for Summary Judgment [P-46, p. 7].

[extensions] of credit to the extent obtained by false pretenses, a false representation, or actual fraud."  It contends in the alternative that its claim for the transferred money is nondischargeable under Bankruptcy Code §523(a)(6), which excepts from discharge "any debt…for willful and malicious injury by the debtor to another entity or to the property of another entity."

### A.  Fraud

SEPH argues that the debtor's circumvention of the charging order constitutes actual fraud within the meaning of §523(a)(2)(A) and therefore renders him liable for a nondischargeable debt for the sums transferred from Green & Sons to the accounting firm.  But the charging order does not prohibit Green & Sons or the other entities it names from conducting routine business; rather, it directs Green & Sons to pay SEPH any distributions the limited liability companies make with respect to Lawrence Green's interest, for application against the judgment debt.

"The key element of a nondischargeability claim for actual fraud under section 523(a)(2)(A) is the *scienter* requirement.  The underlying conduct must involve 'moral turpitude or intentional wrong.'  Thus, a debt arising from constructive fraud is not actual fraud and is dischargeable under section 523(a)(2)(A)."  4 COLLIER ON BANKRUPTCY ¶523.08[1][e] (2018).  Examples of fraudulent conduct involving "moral turpitude or intentional wrong" would be embezzlement, *Neal v. Clark*, 95 U.S. 704, 709 (1877), and conspiring to defraud the United States, *Jordan v. De George*, 341 U.S. 223, 232 (1951).  "[Actual fraud] 'consists in any kind of artifice by which another is deceived…. [It] implies moral guilt….'" *Therrell v. Georgia Marble Holdings Corp.*, 960 F.2d 1555, 1563 (11th Cir. 1992).

SEPH at trial sought to prove that Green concealed funds in family entities as "retained earnings" for the LLCs, but offered no persuasive evidence that the entities were required to

distribute the funds to the debtor or that the debtor concealed, much less received, those earnings in violation of the charging order.  The evidence weighed against that finding.  The defendant testified that he needed funds to pay his accountant to prepare the returns but had no other source of funds than the $1,300 in his retirement account.[14]  Green & Sons had enough money to cover the expense and so he directed the bookkeeper to send funds to cover the balance.[15]  Considering Green's testimony and other evidence, SEPH did not sustain its burden of proving that Green intended to deceive SEPH by directing the transfer.  Indeed, Green testified that his motive was to fulfill his duties to be eligible to be a debtor and not to injure the plaintiff.[16]  SEPH argues that the transfer is akin to the debtor's scheme in *Husky Intern. Elecs. v. Ritz*[17] because the defendant's pattern and practice of behavior indicates fraud.  But SEPH overlooks the missing key element: *scienter*.

SEPH sought to impeach Green with his November 22, 2017 deposition testimony colorfully expressing a strong dislike of SEPH.[18]  However, Green's trial testimony was entirely credible, notwithstanding the debtor's obvious dislike for SEPH.  It supports a finding that his sole goal in transferring $8,700 from Green & Sons to his accountant was to complete his tax returns to allow him to obtain bankruptcy protection.

SEPH did not carry its burden of proving under 11 U.S.C. §523(a)(2)(A) that Green actually intended to defraud it by causing Green & Sons to make the transfer.

---

[14] Trial Transcript [P-70], pp. 135, line 22 – 136, line 5.

[15] *Id*.

[16] Trial Transcript [P-70], p. 141, lines 5-8.

[17] __ U.S. __, 136 S.Ct. 1581 (2016).

[18] Trial Transcript [P-70], p. 125, line 24 – p. 128, line 13.

**B.  Willful and Malicious Injury**

The next issue is whether SEPH's claim for $8,700 may be nondischargeable on the basis that Green willfully and maliciously injured SEPH by transferring funds in violation of the charging order.

Section 523(a)(6) excepts from discharge "any debt…for willful and malicious injury by the debtor to another entity or to the property of another entity."  In *Matter of Miller,* 156 F.3d 598 (5th Cir.1998), the Fifth Circuit considered the application of section 523(a)(6) in light of the Supreme Court's ruling in *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 978, 140 L.Ed.2d 90 (1998).  *Miller* reasoned that the term "willful and malicious injury" is a single, unitary concept that is determined by a two-pronged test, namely, that "an injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm."  *Miller,* 156 F.3d at 606.  The court later honed its analysis of the plaintiff's burden under section 523(a)(6), holding that to render a debt nondischargeable "a debtor must commit an intentional or substantially certain injury [*sic*] in order to be deprived of a discharge. A debt is not excepted from discharge if the debtor has committed a willful or knowing act [that does not result in injury]."  *In re Williams,* 337 F.3d 504, 509 (5th Cir. 2003).

To prevail, SEPH needed to prove not only that Green's actions caused it to suffer an injury but also that the injury was intentionally or substantially certain to result from the debtor's action.

### *1. There Was an Injury.*

SEPH argues that Green converted its property when he transferred funds from the family limited liability company to his accountant in part to satisfy his own personal obligation to the accounting firm.  It contends that the transfer was a conversion, an intentional tort that should

render the debt nondischargeable. *See Hiner v. Koukhtiev (In re Koukhtiev)*, 576 B.R. 107, 123 (Bankr. S.D. Tex. 2017), citing 4 COLLIER ON BANKRUPTCY ¶523.12[4] ("[T]he conversion of another's property or interest in property without the owner's knowledge or consent, done intentionally and without justification and excuse, is a willful and malicious injury within the meaning of [§523(a)(6)].")

The Supreme Court in *Kawaauhua v. Geiger* held that §523(a)(6) applies to "acts done with actual intent to cause injury" but does not include debts arising from negligent or reckless conduct or even intentional conduct when the resulting injury is unintended.[19]

In defense of his action, the debtor testified that though he was aware of the charging order he was not thinking of SEPH and its interests when he transferred the funds to his accountant. He used the money to pay for tax returns for several family businesses, his wife and himself, so that the couple could maintain their chapter 7 case.[20]

SEPH demonstrated that it suffered injury by Green's diversion of funds it should have received had Green obeyed the charging order. SEPH argued that the full amount of the $8,700[21] transferred was subject to its charging order, but failed to offer evidence showing distributions to the debtor in that amount. Although Green needed and benefitted from the preparation of tax returns for all of his entities,[22] the accounting firm applied only $1,626[23] of the $8,700 Green & Sons paid to the bill for preparing the Greens' personal returns. The balance

---

[19] 523 U.S. 57, 64 (1998) ("We hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6).")

[20] Trial Transcript [P-70], p. 133, lines 14-21.

[21] The amount of the total $10,000 tax preparation fee remaining after deducting $1,300 in exempt debtor assets.

[22] *See* n. 6.

[23] The amount of the $2,926 Hartmann charged to prepare the debtors' tax returns remaining after applying $1,300 in exempt debtor assets.

was applied for preparing returns of other Green family entities. Those sums were not "distributions" to the defendant within the meaning of the charging order, but instead were operating expenses of the limited liability companies.[24]

Green intentionally routed the funds directly from Green & Sons to the accountant, injuring SEPH by diverting $1,626 that it should have received as a distribution on account of Green's financial interest in the limited liability company.

### *2. The Debtor's Action Was Willful and Malicious.*

The next issue is whether SEPH's injury was inflicted willfully and maliciously. An action is "willful and malicious" under section 523(a)(6) where there is either an objective substantial certainty of harm or a subjective motive to cause harm. *Miller,* 156 F.3d at 606.

#### *a. Subjective motive to cause harm*

SEPH argues that the debtor's malice motivated his circumvention of the charging order to harm it, relying principally on the debtor's November 22, 2017 deposition testimony.[25] But Green at trial denied he intended to harm SEPH by making the transfer, insisting instead that he used the money from Green & Sons only to fulfill his duties as a chapter 7 debtor.[26] The debtor explained that he authorized Green & Sons to pay the accountants because "that's where the money was and that's where the funds were available and it didn't - - I didn't give a lot of thought to it other than that. We had the money available in that company and, and the bills needed to be paid."[27]

---

[24] Green testified that informal inter-company loans occurred between the Green entities, allowing one company in possession of excess funds to cover the expenses of another that may be in need of funds. Trial Transcript [P-70], p. 24, lines 2-10.

[25] *See* n. 18.

[26] *See* n. 16.

[27] Trial Transcript [P-70], p. 137, line 22 – p. 138, line 4.

The debtor credibly testified that his goal in transferring $8,700 from Green & Sons—where money was available—to his accountant was solely to complete his tax returns and comply with the requirements for a bankruptcy filing. No credible evidence undermines that conclusion.

### b. *Objective substantial certainty of harm*

Despite his protests, Green's testimony does not support a finding that his actions did not carry an objective substantial certainty of harm to SEPH.

The debtor knew of the charging order when he caused Green & Sons to transfer the funds.[28] The transfer of money away from Green & Sons to which SEPH had a claim plainly posed an objective, substantial certainty of harming SEPH.

A court may infer that a debtor acted with malice, for purposes of § 523(a)(6), if the debtor acts "in a manner which one knows will place the lender at risk, such as converting property in which the lender holds a security interest." *In re Lobell*, 390 B.R. 206, 217 (Bankr. M.D. La. 2008), citing *In re Theroux,* 49 F.3d 728, 1995 WL 103342 at *3 (5th Cir.1995). Green's causing Green & Sons to transfer money to pay for his personal tax returns therefore was malicious for purposes of 11 U.S.C. §523(a)(6).

## V. CONCLUSION

The debtor's actions were objectively and substantially certain to cause harm to SEPH by depriving it of $1,626 that the charging order entitled SEPH to recover. Accordingly, SEPH is

---

[28] Trial Transcript [P-70], p. 137, lines 15-24.

entitled to judgment under 11 U.S.C. §523(a)(6) declaring that its $1,626 claim against defendant Jeffrey Stephen Lawrence Green is nondischargeable.

Baton Rouge, Louisiana, July 6, 2018.

**<u>s/ Douglas D. Dodd</u>**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE